**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| ROBERT WAYNE MAURER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:18-cv-00716-SPM |
| | ) | |
| ST. LOUIS COUNTY POLICE | ) | |
| DEPARTMENT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**<u>MEMORANDUM AND ORDER</u>**

This matter comes before the Court on the motion of plaintiff Robert Wayne Maurer for leave to commence this civil action without prepayment of the required filing fee. (Docket No. 6). Having reviewed the motion and the financial information submitted in support, the Court has determined that plaintiff lacks sufficient funds to pay the entire filing fee, and will assess an initial partial filing fee of $5.25. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, the Court will dismiss plaintiff's complaint without prejudice as to defendant St. Louis County Police Department, defendant Jason Bockoff, and the excessive force claims against defendants William Belcher, Unknown Fasson, and Unknown McGee in their individual and official capacities. *See* 28 U.S.C. § 1915(e)(2)(B). Furthermore, the Court will stay plaintiff's claims of false arrest, false imprisonment, and denial of access to an attorney against defendants Belcher, Fasson, and McGee until final disposition of plaintiff's state court criminal action, including all direct appeals and post-conviction proceedings.

**28 U.S.C. § 1915(b)(1)**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his

prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id*.

In support of his motion to proceed in forma pauperis, plaintiff has submitted a certified inmate account statement. (Docket No. 7). The certified inmate account statement shows an average monthly deposit of $26.26. The Court will therefore assess an initial partial filing fee of $5.25, which is 20 percent of plaintiff's average monthly deposit.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but "does not accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

**The Complaint**

Plaintiff is an inmate at the Southeast Correctional Center in Licking, Missouri. He brings this action pursuant to 42 U.S.C. § 1983 against defendants St. Louis County Police Department, Detective William Belcher, Detective Fasson, Detective McGee, and Jason Bockoff. The defendants are sued in both their individual and official capacities.

Plaintiff's complaint consists of a Court-provided §1983 form, a partial transcript from a court hearing, and a St. Louis County Police Department *Miranda* warning and waiver form.[1] On January 11, 2016, plaintiff states that he was "taken" against his will, handcuffed, and "ruffed up" by St. Louis County police officers and detectives. (Docket No. 1 at 5). He claims this took place without a warrant, and that a warrant was not processed in his case. He further asserts that he asked for an attorney but was "deprived of [his] Constitutional Rights." At no point in the complaint does plaintiff specifically identify the role played by defendants Belcher, McGee, or Fasson. However, based on the hearing transcript, it appears that Detectives Belcher and McGee were present at plaintiff's questioning, and Detective Fasson was present when plaintiff was arrested. (Docket 1-2 at 4; Docket No. 1-2 at 6-7). Furthermore, based on a handwritten annotation made on the hearing transcript, it appears that plaintiff was arrested at gunpoint. (Docket No. 1-2 at 3).

As to defendant Bockoff, plaintiff alleges that he "was responsible for his daughter's actions and for her [lies]." (Docket No. 1-1). He states that Bockoff's daughter, who is apparently plaintiff's victim in his criminal case, made false statements against him.

Plaintiff alleges that defendants are liable for excessive force, false arrest, false imprisonment, denial of an attorney during questioning, and for the victim's purported false statements against him. (Docket No. 1 at 2; Docket No. 1-1). He requests that all officers and detectives involved in his case be fired for their lack of professionalism. (Docket No. 1 at 6; Docket No. 1-1). He also seeks damages in the amount of $30,000,000 from the St. Louis County Police Department. (Docket No. 1 at 6). Finally, plaintiff requests $100,000 in damages specifically from defendant Bockoff. (Docket No. 1-1).

---

[1] The Court will treat these attachments to the complaint as part of the pleadings. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes").

**Discussion**

Plaintiff's complaint contains claims of excessive force, false arrest, false imprisonment, denial of access to an attorney, and false statements. Having carefully reviewed and liberally construed the complaint, and for the reasons discussed below, the Court will dismiss plaintiff's claims against defendants St. Louis County Police Department and Jason Bockoff, and the excessive force claims against defendants William Belcher, Unknown Fasson, and Unknown McGee in their individual and official capacities. Furthermore, the Court will stay plaintiff's claims of false arrest, false imprisonment, and denial of access to an attorney against defendants Belcher, Fasson, and McGee until final disposition of plaintiff's criminal action and all post-conviction proceedings.

**A. Defendant St. Louis County Police Department**

Plaintiff's claims against defendant St. Louis County Police Department must be dismissed. The St. Louis County Police Department is a department or subdivision of the county, and not a juridical entity, suable as such. *Ketchum v. City of West Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992). *See also Owens v. Scott Cty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003) (stating that "county jails are not legal entities amenable to suit"); and *De La Garza v. Kandiyohi Cty. Jail*, 18 Fed. Appx. 436, 437 (8th Cir. 2001) (affirming district court dismissal of county jail and sheriff's department as parties because they are not suable entities).

Even if St. Louis County is substituted as the proper party defendant, plaintiff has still failed to state a claim for county liability.

A local governing body can be sued directly under § 1983. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). Liability may attach if the constitutional violation is the result of (1) an official policy, (2) an unofficial custom, or (3) a deliberately indifferent

failure to train or supervise. *Mick v. Raines*, 883 F.3d 1075, 1089 (8th Cir. 2018). Thus, there are three ways in which a plaintiff can demonstrate the liability of a municipal entity.

First, a plaintiff can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). *See also Russell v. Hennepin Cty.*, 420 F.3d 841, 847 (8th Cir. 2005) ("A policy is a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible…for establishing final policy with respect to the subject matter in question"). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id.* at 390.

Alternatively, a plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, the plaintiff must demonstrate:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013). Finally, a plaintiff can show municipal liability by establishing a deliberately indifferent failure to train or supervise. To do so, the plaintiff must demonstrate a "pattern of similar constitutional violations by untrained employees." *S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

Plaintiff does not allege any facts referencing an unconstitutional policy or custom on behalf of St. Louis County or the St. Louis County Police Department. He also does not state that any policy or custom caused the constitutional violations of which he complains. Furthermore, he does not allege a pattern of constitutional violations of untrained county employees sufficient to state a claim that the county was deliberately indifferent in training or supervision.

It is not enough that plaintiff alleges that certain defendants were employed by the St. Louis County Police Department, because "a municipality cannot be held liable solely because it employs a tortfeasor." *Monell*, 436 U.S. at 691. In other words, a municipality cannot be held liable under § 1983 on a theory of respondeat superior. *A.H. v. St. Louis Cty., Mo.*, 891 F.3d 721, 728 (8th Cir. 2018). Instead, as noted above, a plaintiff suing a local governing body must demonstrate an unconstitutional official policy, unofficial custom, or a failure to train or supervise. *See Marsh v. Phelps Cty.*, No. 17-1260, 2018 WL 3863923, at *4 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Since plaintiff has failed to allege any facts pertaining to an official policy, unofficial custom, or failure to train, he has not stated a claim for municipal liability. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged

deprivation of plaintiff's rights). Therefore, the claims against defendant St. Louis County Police Department must be dismissed.

### B. Defendant Bockoff

Plaintiff's claims against defendant Bockoff must be dismissed because plaintiff has not alleged the Bockoff acted under color of state law. In order to state a claim for relief under 42 U.S.C. § 1983, "a plaintiff must allege sufficient facts to show (1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010). To that end, only state actors can be held liable under § 1983. *Carlson v. Roetzel & Andress*, 552 F.3d 648, 650 (8th Cir. 2008). *See also Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975 (8th Cir. 1993) (stating that § 1983 secures constitutional rights from government infringement, not infringement by private parties).

When a private party acts under color of state law, it can be held liable under § 1983. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004). However, a private party may only be held liable "if it is a willful participant in joint activity with the State or its agents." *Gibson v. Regions Fin. Corp.*, 557 F.3d 842, 846 (8th Cir. 2009). In order to state a claim against a private party under § 1983, the plaintiff "must allege, at the very least, that there was a mutual understanding, or a meeting of the minds, between the private party and the state actor." *Mershon v. Beasley*, 994 F.2d 449, 451 (8th Cir. 1993).

Plaintiff alleges that defendants Belcher, Fasson, and McGee are detectives with the St. Louis County Police Department, and that they violated his constitutional rights in arresting him. Clearly, these defendants are state actors, and their actions allegedly taken under color of state law. However, defendant Bockoff is not asserted to be a member of law enforcement. Instead,

plaintiff describes him as the father of a daughter who gave false statements. Specifically, he states that Bockoff "was responsible for his daughter's actions and for her [lies]." In other words, Bockoff is being sued as the father of the victim in plaintiff's criminal case.

This does not make Bockoff a state actor, as mere invocation of state legal procedures does not constitute state action. *See Youngblood v. Hy-Vee Food Stores, Inc.*, 266 F.3d 851, 855 (8th Cir. 2001) (stating that store employee's detention of suspected shoplifter until arrival of police was not state action). Moreover, plaintiff fails to allege that Bockoff was willfully participating in a joint activity with the state or its agents, or that any mutual understanding between Bockoff and a state actor existed. As such, plaintiff has failed to demonstrate that Bockoff acted under color of state law. Accordingly, plaintiff's claims against him must be dismissed.

## C. Excessive Force Claims Against Defendants Belcher, Fasson, and McGee

Plaintiff's excessive force claims against defendants Belcher, Fasson, and McGee in both their individual and official capacities must be dismissed for failure to state a claim.

"The Fourth Amendment protects citizens from being seized through excessive force by law enforcement officers." *Thompson v. City of Monticello, Ark.*, 894 F.3d 993, 998 (8th Cir. 2018). *See also Andrews v. Fuoss*, 417 F.3d 813, 818 (8th Cir. 2005) ("The right to be free from excessive force is included under the Fourth Amendment's prohibition against unreasonable seizures of the person"); and *Wilson v. Spain*, 209 F.3d 713, 715 (8th Cir. 2000) ("The Fourth Amendment's prohibition against unreasonable seizures of the person applies to excessive-force claims that arise in the context of an arrest or investigatory stop of a free citizen"). The violation of this right is sufficient to support an action under § 1983. *Crumley v. City of St. Paul, Minn.*, 324 F.3d 1003, 1007 (8th Cir. 2003).

Whether force is excessive under the Fourth Amendment requires a determination of whether or not law enforcement officers' actions are "objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Ellison v. Lesher*, 796 F.3d 910, 916 (8th Cir. 2015). Factors that are relevant to the reasonableness of an officer's conduct include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Burnikel v. Fong*, 886 F.3d 706, 710 (8th Cir. 2018).

Plaintiff's statement of claim regarding excessive force asserts, in its entirety, that "on January 11, 2016, [I] was taken against my will and handcuffed [and] ruffed up by St. Louis County Police officers and Detectives…" (Docket No. 1 at 5). In the transcript attached to the complaint, plaintiff has annotated the document to further assert that he was arrested "at gun point." (Docket No. 1-2 at 3).

The fact that plaintiff was "taken against [his] will" does not describe an excessive force claim; rather, it merely defines a typical arrest, where a person is taken into custody whether he or she desires it or not. Similarly, the fact that plaintiff was handcuffed does not, in and of itself, demonstrate the use of excessive force, since the use of handcuffs can be a reasonable precaution in effectuating a person's arrest. *See Crumley*, 324 F.3d at 1008 (stating "that for the application of handcuffs to amount to excessive force there must be something beyond allegations of minor injuries"); *U.S. v. Martinez*, 462 F.3d 903, 907 (8th Cir. 2006) (stating that use of handcuffs during *Terry* stop can be a reasonable precaution to protect officer safety and maintain status quo). As to the assertion that plaintiff was arrested at gunpoint, he does not state why this was wrongful, and he certainly does not allege that any weapons were used against him. Meanwhile,

plaintiff's statement that he was "ruffed up" is vague and ambiguous. He does not offer any detail whatsoever to explain what he means by "ruffed up," or to explain the context in which this allegedly occurred. Without more, plaintiff's assertion that he was "ruffed up" amounts to a legal conclusion, which the Court is not required to accept. *See Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017) (stating that courts "are not bound to accept as true a legal conclusion couched as a factual allegation, and factual allegations must be enough to raise a right to relief above the speculative level").

Furthermore, plaintiff's statement of facts does not provide the actual roles played by defendants Belcher, Fasson, or McGee. Instead, he refers to the three law enforcement defendants only generally, as "St. Louis County Police officers and Detectives." In order to establish liability under § 1983, "there must be a causal link to, and direct responsibility for, the alleged deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990). Here, aside from naming Belcher, Fasson, and McGee as defendants, he does not allege how each officer was individually responsible for violating plaintiff's constitutional rights. Accordingly, his excessive force claims against defendants Belcher, Fasson, and McGee in their individual capacities must be dismissed.

Plaintiff's excessive force claims against defendants Belcher, Fasson, and McGee in their official capacities must also be dismissed. A suit brought against a state official in his or her official capacity pursuant to § 1983 is not a suit against the official, but rather a suit against the official's office. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). In other words, the real party in interest in an official-capacity suit is not the named official, but the governmental entity. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). *See also Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) ("A suit against a public official in his official capacity is actually a

suit against the entity for which the official is an agent"). Accordingly, a plaintiff suing a public employee in his or her official capacity "sues only the public employer and therefore must establish the municipality's liability for the alleged conduct." *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016).

As previously noted, municipal liability under § 1983 may attach if the constitutional violation resulted from (1) an official policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise. *See Mick*, 883 F.3d at 1089; and *Marsh*, 2018 WL 3863923, at *4. Plaintiff, as discussed above, has not alleged any facts regarding an official policy, an unofficial custom, or a deliberately indifferent failure to train or supervise. Such facts are necessary to state a claim against a municipality. *See Ulrich*, 715 F.3d at 1061 (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights). Therefore, plaintiff's official capacity claims against defendants Belcher, Fasson, and McGee must be dismissed.

**D. False Arrest, False Imprisonment, and Denial of Access to an Attorney Claims against Defendants Belcher, Fasson, and McGee**

Plaintiff's claims against defendants Belcher, Fasson, and McGee for false arrest, false imprisonment, and denial of access to an attorney will be stayed pending final disposition of plaintiff's pending criminal action.

The United States Supreme Court has held that in order to recover damages under § 1983 for an unconstitutional conviction or imprisonment, a plaintiff must prove "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). A claim

for damages regarding a conviction or sentence that has not been invalidated is not cognizable under § 1983. *Id*. at 487. *See also Newmy v. Johnson*, 758 F.3d 1008, 1009 (8th Cir. 2014); *Sheldon v. Hundley*, 83 F.3d 231, 233 (8th Cir. 1996).

In *Wallace v. Kato*, the Supreme Court observed that it was common practice in § 1983 actions to stay the civil proceedings until the criminal case had ended. 549 U.S. 384, 393-94 (2007). The issue in *Wallace* was the timeliness of a § 1983 suit seeking damages for an arrest that allegedly violated the Fourth Amendment. *Id*. at 386. In answering that question, the Supreme Court noted that "[f]alse arrest and false imprisonment overlap; the former is a species of the latter." *Id*. at 388. The Court explained that where "a plaintiff files a false arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, in in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended." *Id*. at 393-94. Otherwise, the court and the parties are left to "speculate about whether a prosecution will be brought, whether it will result in conviction, and whether the impending civil action will impugn that verdict, all this at a time when it can hardly be known what evidence the prosecution has in its possession." *Id*. at 393 (internal citations omitted).

Plaintiff alleges that defendants Belcher, Fasson, and McGee violated his constitutional rights by arresting and imprisoning him without a warrant, and by denying him access to an attorney. The underlying Missouri criminal case against plaintiff is docketed as *State v. Maurer*, No. 16SL-CR00167-01 (21st Judicial Circuit, St. Louis County)[2]. The Court takes judicial notice of this public state record. *See Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007) (explaining that district court may take judicial notice of public state records); and *Stutzka v. McCarville*, 420

---

[2] *State v. Maurer*, No. 16SL-CR00167-01 (21st Judicial Circuit, St. Louis County) was retrieved from Missouri Case.net, http://www.courts.mo.gov/, which is Missouri's state court automated case management system.

F.3d 757, 760 n.2 (8th Cir. 2005) (stating that courts "may take judicial notice of judicial opinions and public records").

On August 28, 2017, the State of Missouri filed an amended information charging plaintiff with statutory sodomy in the first degree and failure to register as a sex offender. Plaintiff had a jury trial on the matter. On August 31, 2017, plaintiff was convicted of attempted sodomy in the first degree and failure to register as a sex offender. He was sentenced on October 12, 2017 to life without the possibility of parole on the attempted statutory sodomy conviction, and a concurrent fifteen year term of imprisonment on the failure to register conviction. Plaintiff filed a notice of appeal on October 20, 2017. There has been no ruling on plaintiff's direct appeal.

Plaintiff's § 1983 action is based on the same set of facts and circumstances giving rise to the Missouri state criminal case currently on appeal in *State v. Maurer*, No. 16SL-CR00167-01. His § 1983 complaint includes allegations of false arrest, false imprisonment, and improper denial of access to an attorney. As evidenced by the partial transcript attached to plaintiff's complaint, these are issues that were before the state court in plaintiff's criminal case, and were likely ruled upon by the court. Furthermore, these claims relate to rulings that are likely on appeal before the Missouri Court of Appeals. The principles of *Wallace v. Kato* dictate that further consideration of plaintiff's § 1983 claims of false arrest, false imprisonment, and denial of access to an attorney should be stayed until the underlying criminal matter against plaintiff has been resolved. Additionally, a stay or abstention until resolution of the criminal matter is appropriate because a prisoner may not recover damages in a § 1983 suit where the judgment would necessarily imply the invalidity of his conviction, continued imprisonment, or sentence, unless the conviction or sentence is reversed, expunged, or called into question by the issuance

of a writ of habeas corpus. *See Heck*, 512 U.S. at 486-87; *Schafer v. Moore*, 46 F.3d 43, 45 (8th Cir. 1995). Therefore, plaintiff's claims of false arrest, false imprisonment, and denial of access to an attorney will be stayed pending final disposition of plaintiff's criminal charges in *State v. Maurer*, No. 16SL-00167-01.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis (Docket No. 6) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial partial filing fee of $5.25 within twenty-one (21) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that plaintiff's claims against defendants St. Louis County Police Department and Jason Bockoff are **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that plaintiff's claims of excessive force against defendants William Belcher, Unknown Fasson, and Unknown McGee in their individual and official capacities are **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that plaintiff's claims for false arrest, false imprisonment, and denial of access to an attorney against defendants William Belcher, Unknown Fasson, and Unknown McGee are **STAYED** pending final disposition of plaintiff's criminal charges in *State v. Maurer*, No. 16SL-00167-01 (21st Judicial Circuit, St. Louis County), including all direct appeals and post-conviction proceedings.

**IT IS FURTHER ORDERED** that plaintiff shall notify the Court in writing concerning the final disposition of the criminal charges against him in *State v. Maurer*, No. 16SL-00167-01 (21st Judicial Circuit, St. Louis County), including all direct appeals and post-conviction proceedings.

**IT IS FURTHER ORDERED** that this case is **ADMINISTRATIVELY CLOSED** pending final disposition of the criminal charges against plaintiff, and may be reopened by plaintiff's filing of a motion to reopen the case after such final disposition of all direct appeals and post-conviction proceedings.

**IT IS HEREBY CERTIFIED** that an appeal from this partial dismissal would not be taken in good faith.

A separate order of partial dismissal will be entered herewith.

Dated this 17th day of September, 2018.

_____

STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE